same. While it is true that obstruction to litigation is not per se unlawful, and that as a consequence a defendant in a foreclosure action acting for his own profit and not the injury of another may, without criminality, for the purpose of securing delay, so comport himself as to force the person suing him to use less speedy process and to proceed by less expeditious methods than such person otherwise might, it is against public policy and therefore unlawful for a person as in the case at bar about to become a party defendant to an action to obligate himself to third parties—that is to say, parties who will not be proper parties defendant in such action to delay, hinder, and obstruct the plaintiff therein. This is for the reason, among others, that public policy requires that the course of litigation within legal limits shall rest in the free and uncontrolled will of the parties to the same.

[2] Under the agreement, as set forth in the indictment, that one of the defendants becoming a party defendant to the foreclosure action and not wishing to delay the same would find himself constrained to do so at the behest of persons not parties to the same (being the codefendants in the indictment) because he had obligated himself to them in that behalf, while in reality such constraint would not exist, as such an agreement owing to public policy would be unenforceable at the instance of such parties, the fact that it was unenforceable as against public policy would result from the circumstance that it unlawfully tended to the obstruction of justice.

It is perhaps also true that the indictment sufficiently alleges the illegality of the means agreed to be used by the defendants to sustain it under the authority of People v. Willis, 158 N. Y. 392, 53 N. E. 29.

It follows that as the indictment sets forth an agreement having an unlawful end or object, to wit, one made criminal by subdivision 6 of section 580 of the penal law, it is sufficient, and the demurrer must be disallowed.

(70 Misc. Rep. 446.)

## PEOPLE v. LEE.

(Court of General Sessions, New York County. January, 1911.)

1. INDICTMENT AND INFORMATION (§ 10*)—FINDINGS—HEARING IN ONE PROCEEDING AS EVIDENCE OF OTHER CRIMES.

    As a grand jury might hear evidence in separate proceedings on any number of charges against an accused for violations of law, there is no impropriety in hearing in one proceeding evidence of related or unrelated crimes, provided in its last analysis each indictment is sustained by legal evidence.

    [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 50–61; Dec. Dig. § 10.*]

2. EXTORTION (§ 13*)—SUFFICIENCY OF INDICTMENT.

    An indictment for extortion charging that certain money, the property of T. and B., partners under a certain firm name, was feloniously received by accused from such partners with their consent by reason of a wrongful use of "fear on the part of said copartners, induced by accused by means of a threat" to such partners to injure and prevent them from properly and profitably carrying on their business in a certain par-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ticular, was not insufficient as charging the receiving of money through fear induced on the part of the copartnership, while the only evidence before the grand jury was that of T., to the effect that the transaction in which accused figured was had exclusively with T.; the phrase "fear on the part of said copartners induced * * * by means of a threat" being descriptive of the individuals composing the firm, and did not refer to the copartnership.

[Ed. Note.—For other cases, see Extortion, Cent. Dig. § 12; Dec. Dig. § 13.*]

3. EXTORTION (§ 13*)—SUFFICIENCY OF INDICTMENT.
In view of the evidence before the grand jury, it was not necessary for the indictment to allege that the partners were put in fear by a threat of accused, it being sufficient to allege that the money was obtained by a wrongful use of fear induced by a threat to do unlawful injury to the business of which T. was a member.

[Ed. Note.—For other cases, see Extortion, Cent. Dig. § 12; Dec. Dig. § 13.*]

4. EXTORTION (§ 8*)—ELEMENTS OF OFFENSE—MONEY EXTORTED.
In a prosecution for extortion, it is not material whether the money which the individual threatened paid to accused was his own money or the money of a copartnership; it not being a question of whose money was extorted by accused, but whether it was obtained by accused from the individual threatened.

[Ed. Note.—For other cases, see Extortion, Cent. Dig. § 8; Dec. Dig. § 8.*]

Richard H. Lee was indicted for misappropriation as a public officer, and grand larceny, forgery, and extortion, and moves to dismiss the indictments. Motions denied.

Abraham Levy and Henry W. Unger, for the motion.
Oswald N. Jacoby, Deputy Asst. Dist. Atty., opposed.

ROSALSKY, J. This is a motion to dismiss three indictments filed against the above-named defendant by the grand jury, as follows: Indictment No. 77,178, charging him in four counts, in various forms, with the crime of misappropriation by a public officer and grand larceny in the second degree; indictment No. 78,577, charging him in three counts, respectively, with making a false entry in an account as a public officer, with making a false entry in an account as a person receiving money on behalf of a city, and with making a false entry in an account book belonging to and appertaining to the city of New York with intent to defraud and conceal a larceny; indictment No. 78,552, charging him in one count with the crime of extortion, in that the sum of $75, the personal property of Joseph Tino and John Belsone, copartners in trade engaged in business under the firm name and style of Joseph Tino & Co., was feloniously received by the defendant from "the said copartners with their consent, such consent being then and there by him, the said Richard H. Lee, induced by a wrongful use of fear, to wit, fear on the part of said copartners then and there by him, the said Richard H. Lee, induced by means of a threat by him, the said Richard H. Lee, then and there made to said copartners, that is to say, to injure, annoy, harass and obstruct them, the said copartners, in their business, and to prevent them from prop-

erly, freely, and profitably carrying on the same, and especially to prevent and hinder them from receiving their merchandise at the public docks in the city of New York unless they, the said copartners, gave to him, the said Richard H. Lee, the said sum of money," etc.

The stenographer's minutes show that the grand jury heard in a single proceeding the testimony of the people's witnesses concerning the charges of grand larceny, forgery, and extortion, and upon such testimony the said three indictments were found. The learned counsel for the defendant concede that while the misappropriation indictment and the forgery indictment might be deemed to relate to one transaction, which transaction might constitute those crimes, and that, while the hearing of those two charges in one proceeding might not furnish ground for objection, nevertheless it was manifest impropriety for the district attorney, in a single proceeding, to present evidence concerning the extortion charge, because the latter offense was absolutly unrelated and disconnected in point of time, circumstance, and subject-matter, and urge that in presenting evidence of the extortion charge in the same proceeding the minds of the grand jurors were predisposed to believe the defendant guilty of all of the offenses, and that the orderly practice and procedure before the grand jury required that the evidence relating to the extortion charge be separately heard.

In People v. Rutherford, 47 App. Div. 209, 62 N. Y. Supp. 224, Mr. Justice Kellogg, writing for the court, said:

"The chief ground urged as legal error on the part of the grand jury is the listening to testimony of the one witness as to the whole transaction occurring between her and the defendant had at one time, touching the two notes, for the forging of each of which he was separately indicted. It certainly would not be improper for the same grand jury to indict the same man for two distinct offenses. Having indicted him once, it might with equal force be urged that the second indictment was in some way affected by the first, and that the grand jury was disqualified as unable to properly withstand the force of the odium resulting from the first indictment. I do not think that it was an invasion of any of the inalienable rights of the citizen to permit this common practice of hearing all the evidence of a single witness, when before the grand jury, bearing in a legal way upon any crime for which a person is sought to be indicted."

In People v. Acritelli, 57 Misc. Rep. 581, 110 N. Y. Supp. 436, my learned associate, Judge Crain, in a lucid and well-considered opinion, said:

"My view of the matter is that convenience suggests, where offenses belong to the same general class, as, for example, two charges of forgery, or two alleged violations of the election law, they be considered by the grand jury at the same time, without the necessity of that formal separation which would entail a delay in the repetition of evidence. Where, as in the case at bar, the deliberations of the grand jury result in indictments which cover all the crimes as to which testimony has been produced before the grand jury, and the crimes are themselves of such a similar character that the grand jury cannot be said to have concluded that a defendant was guilty of one for the reason that they have found him guilty of another, no prejudice results to a defendant.

"A different question would arise if the grand jury, in listening to testimony against a defendant, elicited for the purpose of establishing the defendant's guilt of a particular offense, heard at the same time evidence

against the same defendant bearing upon an unrelated crime, and which testimony did not result in an indictment respecting such other crime. In this event, it might perhaps be urged. with force that the grand jury in finding a given indictment had been influenced by the circumstance that there was testimony before it in impeachment of the defendant's general character, and indicative of his commission of another offense. This is not the situation in the case at bar, and for the reasons stated I am of opinion that this contention cannot prevail."

I agree with my learned associate that where, in a single proceeding, a grand jury hears evidence against a defendant bearing upon unrelated crimes, and upon such evidence finds indictments for all of the offenses, a defendant cannot be heard to urge that his rights were prejudiced before the grand jury. Counsel cite the case of People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, in support of their contention. It is apparent that on a trial of a defendant before a petit jury a distinct crime unconnected with and unrelated to the charge laid in the indictment cannot be given in evidence against a prisoner, except where the evidence of the other crimes is offered to prove the specific crime charged, when it tends to establish, first, motive; second, intent; third, the absence of mistake or accident; fourth, a common scheme or plan embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the others; fifth, the identity of the person charged with the commission of the crime on trial.

The district attorney in presenting to the grand jury evidence of the unrelated crime in the same proceeding did not do so for the purpose of establishing the defendant's guilt upon the charges of larceny and forgery, as is the case where evidence of other crimes is competent to prove any one of the five subdivisions referred to in the Molineux Case; but his purpose in presenting the evidence of the unrelated crime was to have the grand jury find an indictment for the unrelated crime itself. Of course, if in a single proceeding evidence of an unrelated crime is presented to a grand jury for the purpose of loading down a defendant with other acts of wrongdoing, so as to induce in the minds of the grand jury a belief in the defendant's guilt upon a particular charge which it is considering with a view to finding an indictment, the procedure would be open to serious objection, provided it could be shown that, without the prejudicial evidence, no indictment could have been legally found. It seems to me that where the grand jury considers at one time collective charges against a defendant, resulting in the finding of indictments, the test in determining whether the grand jury was justified in finding the indictments is to ascertain from the evidence presented whether on each particular charge there was legal evidence before the grand jury, so that, disregarding the improper and incompetent evidence, the indictment would still have been found; and, if the grand jury were not influenced to find the indictments by the improper evidence, but by the legal evidence before them, the court should permit the indictments to stand and the defendant to be tried thereon.

[1] Inasmuch as the grand jury would not be disqualified from hearing evidence, in separate proceedings, on as many charges as could

be presented against a defendant for alleged violations of law, it is clear that there is no impropriety in a grand jury hearing in one proceeding evidence of related or unrelated crimes, provided, in its last analysis, each indictment is sustained by legal evidence.

[2] It appears from the grand jury minutes that Joseph Tino, one of the members of the firm of Joseph Tino & Co., was the only member of that firm who testified before the grand jury concerning the extortion charge, and that whatever transaction the defendant figured in with respect to this charge was had solely and exclusively with said Tino and not with his copartner, Belsone. Although the indictment charges that the defendant did receive the money from said copartners with their consent, such consent being then and there induced by fear on the part of said copartners by means of a threat by him, the said Richard H. Lee, then and there made to said copartners, nevertheless there was no testimony before the grand jury to show that there was any fear on the part of Belsone induced by means of a threat to him, made by the defendant. The defendant therefore urges that, if any crime is charged in the indictment, it was not established before the grand jury, and that, if any crime was established before the grand jury, it was not charged in the indictment. In other words, it is argued by the learned counsel for the defendant that the fear charged must be inspired in the individuals and not in the copartnership, because a copartnership is an entity distinct from the copartners. This claim would be forceful if the indictment had charged that the fear on the part of the copartnership was induced by means of a threat; but a careful perusal of the indictment clearly shows that the phrase, "fear on the part of said copartners, induced by means of a threat," is descriptive of the individuals composing the firm of Joseph Tino & Co., and refers to Joseph Tino and John Belsone mentioned in the first part of the indictment.

[3] In the light of the evidence before the grand jury, it was not necessary for the indictment to allege that the copartners were put in fear by means of a threat on the part of the defendant. The indictment would have been sufficient if it alleged that the money was obtained by a wrongful use of fear induced by a threat to do an unlawful injury to the business of which John Belsone was a member.

[4] The fact that Tino gave to the defendant copartnership money did not require the pleader to charge that it was copartnership money, because in a case of extortion, it is not material whether the money which the individual threatened paid to a defendant was his own money or the money of a copartnership. It is not a question of whose money was extorted by the defendant, but whether it was obtained by the defendant from the individual threatened. People v. Weinseimer, 117 App. Div. 603, 102 N. Y. Supp. 579. So that if, upon the trial of the defendant, the people shall prove that the defendant feloniously did receive from Tino, with his consent, a sum of money, such consent being induced by a wrongful use of fear on the part of said Tino, induced by means of a threat on the part of the defendant, etc., the indictment could be amended so as to read that one of the partners, by means of a threat, was induced to pay the money to the defendant; and, if such allegation is established upon the defendant's trial, there

can be no just ground for criticism of the indictment, as the evidence would conform to that presented to the grand jury.

I have carefully read the evidence relating to these charges, and am of the opinion that no substantial ground exists which would justify the setting aside of the indictments.

The motions to set aside the indictments herein are denied.

Motions denied.

---

### In re SCHOFIELD'S WILL.

(Surrogate's Court, New York County.   April 29, 1911.)

1. EVIDENCE (§ 81*)—PRESUMPTIONS—LAWS OF ENGLAND.
    In the absence of statute or rule to the contrary, the law of New York as to the probate of wills executed in duplicate will be presumed to be the same as the law of England, as established prior to the independence of the state.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 102; Dec. Dig. § 81.*]

2. WILLS (§ 207*)—EXECUTION IN DUPLICATE—PROBATE.
    Where a will is executed in duplicate, only one of the duplicates, called the "authentic," need be probated; but the other must be produced in court.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 515; Dec. Dig. § 207.*]

3. WILLS (§ 175*)—EXECUTION IN DUPLICATE—REVOCATION.
    Where a will is executed in duplicate, the revocation of one part is a revocation of both.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 454; Dec. Dig. § 175.*]

4. WILLS (§ 290*)—EXECUTION IN DUPLICATE—REVOCATION—PRESUMPTIONS.
    Testator executed a will in duplicate, taking one of the duplicate parts with him and depositing it in his safe at his place of business, and leaving the other with his attorney.  There was uncontroverted evidence that testator, prior to April 25, 1910, took the duplicate in his custody out of his safe and placed it in his pocket.  There was no sufficient evidence that it was ever seen again by any one prior to testator's death on the 30th of May following.  A fruitless search was then made for it.  *Held*, that it would be presumed that he destroyed such duplicate animo revocandi, and hence the probate of the copy in the possession of the attorney would be denied.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 663; Dec. Dig. § 290.*]

Application by Emil Schofield, as executor named in the duplicate wills of George Schofield, deceased, for the probate of the authentic copy of the will.  Probate denied.

Hirsh & Rasquin (Emanuel Newman, of counsel), for proponent.
Benjamin F. Feiner, for contestant.
Abraham Lehman, for legatees.

FOWLER, S.  This is a very interesting cause, and it has been remarkably well presented by counsel for all the parties in court.  Emil Schofield, the executor named in the duplicate wills of George Scho-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes